```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                      CHARLOTTE DIVISION
                       3:08CV524-W¹-02
                        (3:01CR185-V)
```

| | | |
|---|---|---|
| **JOE ANTHONY BROWN,** | ) | |
|     **Petitioner,** | ) | |
| | ) | |
|     v. | ) | <u>ORDER</u> |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
|     **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court upon Petitioner's Motion under 28 U.S.C. to Vacate, Set Aside, or Correct Sentence, filed November 17, 2008. For the reasons stated herein, Petitioner's Motion will summarily be <u>dismissed</u>.

## I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

On September 11, 2001, the grand jury charged Petitioner (along with four other persons) in three counts of a nine-count Indictment with: (1) having conspired to possess with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One); (2) having possessed with intent to distribute more than five grams of cocaine base, or having aided and abetted that offense, in violation of 21

---

¹Petitioner's criminal case was tried and twice sentenced by the Honorable Richard L. Voorhees, United States District Judge for the Western District of North Carolina. However, Judge Voorhees now is assigned primarily to preside over cases which are filed in this Court's Statesville Division. Thus, on December 11, 2007, Petitioner's criminal case was reassigned to the Honorable Frank D. Whitney, United States District Judge for the Western District of North Carolina, one of three judges who preside over cases brought in the Court's Charlotte Division.

U.S.C. §841(a)(1) and 18 U.S.C. § 2 (Count Two); and (3) having used, carried and discharged a firearm during and in relation to the drug conspiracy, and having possessed and discharged such firearm in furtherance of the conspiracy, all in violation of 18 U.S.C. § 924(c)(1). (Case No. 3:01cr185, document # 3).

After being arraigned on the subject charges and entering "not guilty" pleas, Petitioner requested a jury trial. However, each of Petitioner's four co-conspirator/co-defendants entered guilty pleas to the conspiracy charge pursuant to separate plea agreements with the Government, and they all agreed to testify against Petitioner. (Case No. 3:01cr185, document ## 42, 60, 68 and 70: Plea Agreements).

On January 17, 2003, Petitioner filed a Motion to Suppress certain statements which he made to law enforcement officers during a debriefing, which interview Petitioner reportedly believed was conducted pursuant to a non-attribution agreement. (Case No. 3:01cr185, doc. # 106). However, Petitioner's Motion to Suppress was denied. (Case No. 3:01cr185, docket entry made January 22, 2003).

On January 29, 2003, Petitioner's trial was commenced. During its case in chief, the Government presented evidence showing that Petitioner's co-conspirators were substantial crack dealers in the Reid Park neighborhood of Charlotte, North Carolina from mid-1997 until August 1999. See United States v. Brown, 128 Fed.

App'x 975, 977 (4th Cir. April 25, 2005) ("Brown I," hereafter). During that period, Petitioner was a street level dealer who purchased and received on consignment numerous packages of crack from his co-conspirators, which packages Petitioner diluted and repackaged for more profitable street sales. Brown I, at 977. However, in August 1999, Petitioner's relationship with his cohorts took a violent turn when he received a package of "bad dope," that is, bad quality crack from co-conspirator Linwood Kenny. Id. When Kenny refused to refund Petitioner's money for the drugs, Petitioner twice shot at co-conspirator Byron Tate during a drive-by incident. Id. Thereafter, Kenny, Byron Tate and Byron's two brothers, Darius and Lamont Tate, retaliated by engaging Petitioner in a shoot-out. Id. During that shoot-out, Petitioner twice shot Kenny and shot Lamont Tate a single time; however, Kenny and/or Lamont Tate shot and killed Petitioner's girlfriend, and they wounded two other persons. Id. at 978.

At the close of the Government's evidence, Petitioner made a motion for a judgment of acquittal but that motion was denied. (Case No. 3:01cr185, docket entry made January 31, 2003). Thereafter, Petitioner declined to put on any evidence in his defense. Ultimately, the jury deliberated and convicted Petitioner of all charges. (Case No. 3:01cr185, document # 118: Verdict Form). In particular, the jury found that the amount of crack involved in the conspiracy was "at least 50 grams . . ."; and that the amount

involved in the possession charge under Count Two was "at least 5 grams . . . ." (Id.).

On November 12, 2003, Petitioner filed a sentencing memorandum in which he objected to the Presentence Report's recommendation that he be held accountable for his girlfriend's murder under U.S. Sentencing Guidelines § 2D1.1(d)(1), and be sentenced to life imprisonment. Petitioner argued that the calculations were wrong because two or more of his co-defendants already had taken responsibility for the murder and, in any event, the killing was unrelated to his offense conduct. (Case No. 3:01cr185, document # 137).

The Government's sentencing memorandum argued that the Presentence Report's recommendations were correct because Petitioner first shot at Byron Tate in order to discourage future sales of bad quality drugs to him, and he did so with full knowledge that it could have resulted in retaliatory shootings like the one that took his girlfriend's life. (Case No. 3:01cr185, document # 138). In the alternative, the Government argued that an upward departure to a life sentence was warranted because Petitioner's criminal history category (II) did not adequately reflect the seriousness of his past criminal behavior, including an incident which occurred after his girlfriend's murder when Petitioner shot and wounded another one of his co-conspirators five times from point-blank range. (Case No. 3:01cr185, document # 139).

4

On February 19, 2004, the Court conducted Petitioner's resentencing hearing, during which it found that the Presentence Report's recommendations were appropriate. Therefore, the Court grouped the drug counts, applied the murder enhancement and sentenced Petitioner to a life term on those convictions. (Case No. 3:01cr185, document # 143: Judgment). In addition, the Court upwardly departed and sentenced Petitioner to a 134-month term on the firearm conviction. (Id.). Petitioner timely noticed his appeal to the Fourth Circuit Court of Appeals. (Case No. 3:01cr-185, document ## 142 and 144).

On appeal, Petitioner argued that this Court erred in denying his motion for judgment of acquittal on the conspiracy and firearm counts. Brown I, 128 Fed. App'x at 979. However, the appellate Court determined that there was sufficient evidence to support the jury's verdict; therefore, this Court properly denied the motion for judgment of acquittal. Id. at 980-81.

Petitioner also argued that this Court erroneously sentenced him in violation of the then-recently announced rule in United States v. Booker, 543 U.S. 220 (2005). The Brown I Court found that although Petitioner was sentenced consistently with the precedent which was applicable at that time, Booker abrogated that precedent and rendered Petitioner's sentence plainly erroneous. Brown I, 128 Fed. App'x at 982. Accordingly, Brown I affirmed Petitioner's convictions, but vacated and remanded his case for

5

re-sentencing.  Id. at 982-83.

On September 11, 2006, this Court conducted Petitioner's re-sentencing hearing.  On that occasion, defense counsel asked the Court not to impose an upward variance and to consider that Petitioner was a "minor drug dealer." (Sent'g. Tr., filed January 29, 2007, 15-17).  In addition, both defense counsel and Petitioner asked the Court for lenience in light of the fact that Petitioner had three daughters with his murdered former girlfriend, and he hoped to be reunited with them at some point in the future. (Sent'g. Tr. 16-18, 20-21).

For its part, the Court determined--using the jury's finding that the conspiracy had involved "at least 50 grams of crack" and the co-conspirators' testimony--that Petitioner could be held accountable for 500 to 1.5 kilograms of crack.  (Sent'g. Tr. 9-13).  Thereafter, this Court declined to impose an upward variance or to stack Petitioner's sentences and, instead, sentenced him, pursuant to offense level 36 and criminal history category of II, to a statutory maximum term of 240 months imprisonment on the conspiracy conviction, to a 60-month concurrent term on the trafficking conviction, and to a consecutive term of 120 months on the firearm conviction, for a total of 360 months imprisonment.  (Case No. 3:01cr185, document # 163:  Amended Judgment).

Petitioner again appealed to the Fourth Circuit, arguing

that this Court erred in holding him responsible for at least 500 grams but less than 1.5 kilograms of crack cocaine, which amounts exceeded the jury's finding, and in departing upwardly under U.S. Sentencing Guidelines § 4A1.2 for uncharged conduct. United States v. Brown, 255 Fed. App'x 698, 699 (4th Cir. Nov. 26, 2007) ("Brown II, hereafter). However, the Brown II Court determined that Petitioner's sentences properly were calculated and imposed. Id. at 700. Therefore, Petitioner's sentences all were affirmed. Id.

Now, Petitioner has returned to this Court with the instant Motion to Vacate, alleging that he was sentenced beyond the jury's finding, in violation of the rules announced in Apprendi v. New Jersey, 530 U.S. 466 (2000) and its progeny, Booker; and that he was subjected to ineffective assistance of counsel in that his attorney at the second sentencing hearing failed to raise the foregoing Apprendi/Booker claim; he failed to object to the "variance" between Guideline Sentences for cocaine and cocaine base; and he failed adequately to prepare for re-sentencing so that he could have favorably argued the factors set forth under 18 U.S.C. § 3553(a).

## II. ANALYSIS

1. **This Court is authorized to promptly review and dismiss any § 2255 motion which does not contain a claim that entitles the petitioner to relief**.

Pursuant to Rule 4(b) of the Rules Governing Section 2255

7

Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . . " in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. In the event it is determined that the petitioner is not entitled to relief, the reviewing Court must dismiss the motion.

Following such directive, this Court carefully has reviewed Petitioner's Motion to Vacate and the pertinent record evidence. As hereafter explained, such review clearly establishes that Petitioner is not entitled to relief on either of his two claims.

### 2. **Petitioner's challenge to his sentence is barred**.

Petitioner's first claim alleges that the this Court erred in sentencing him beyond the facts determined by the jury, in violation of <u>Apprendi</u> and <u>Booker</u>. However, as was previously noted, Petitioner's second, unsuccessful appeal challenged his sentence on this same ground. Indeed, the appellate Court flatly rejected Petitioner's claim that his sentence violated the rules announced in <u>Apprendi</u> and <u>Booker</u>. <u>Brown</u> II, 255 Fed. App'x at 700.

Significantly, it is well settled that in the absence of a favorable, intervening change in the law which can be applied on collateral review, a petitioner simply is not free to re-litigate claims which already were rejected on direct review. <u>Davis v.</u>

8

United States, 417 U.S. 333, 342 (1974); <u>Boeckenhaupt v. United States</u>, 537 F.2d 1182 (4th Cir.), <u>cert. denied</u>, 429 U.S. 863 (1976). Accordingly, to the extent that Petitioner is seeking to re-litigate this claim without directing the Court's attention to any intervening change in law which authorizes him to do so, his claim simply is procedurally barred.

### 3. **Petitioner's claim of ineffective assistance of counsel also is factually and/or legally baseless**.

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Id</u>. at 689; <u>see also</u> <u>Fields v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir. 1985); <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983); <u>and</u> <u>Marzullo v. Maryland</u>, 561 F.2d 540 (4th Cir. 1977).

Under these circumstances, a petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297, <u>citing</u> <u>Hutchins</u>, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u> <u>Strickland</u>, 466 U.S. at

9

697. Further, in considering the prejudice prong of the analysis, the Court must not grant relief solely because a petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under. . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

Petitioner first argues that trial counsel was ineffective for failing to "object and advocate in regard to the retroactive application of the Booker remedy in a way that effectively raised the maximum sentence." Such claim, it appears, is alleging that counsel failed to convince this Court that Booker precluded his being sentenced beyond the jury's finding. However, as has already been established, the Fourth Circuit has found that this Court's decision as to drug quantity "were properly determined . . . and were not clearly erroneous." Brown II, 255 Fed. App'x at 700. Therefore, counsel could not possibly have been ineffective for failing to discourage the Court from imposing the 240-month term on the conspiracy and possession convictions.

Second, Petitioner argues that counsel was ineffective for failing to "object to the variance between the guideline sentencing for cocaine and cocaine base (resulting in an offense level variance of level 34 to level 36"; however, such contention also

is baseless.  Indeed, at the time that Petitioner was sentenced, the Fourth Circuit repeatedly had upheld the 100:1 variation between crack and powder cocaine sentences.  See, e.g., United States v. Burgos, 94 F.3d 849, 876-77 (4th Cir. 1996) (en banc); United States v. Fisher, 58 F.3d 96, 99-100 (4th Cir. 1995).  In fact, even as late as 2006 in United States v. Eura, 440 F.3d 625, 633 (4th Cir. 2006), the Fourth Circuit reversed a district court's post-Booker attempt to vary downward from the Guidelines' advisory sentencing range and impose a lower term based upon the subject variation.

Rather, it was not until the Supreme Court decided the case of United States v. Kimbrough, 128 S.Ct. 558, 573-74 (2008), that the holding in Eura was abrogated based upon Kimbrough's determination that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case."  See also U.S. Sentencing Guidelines Amendment 706.[2]  Therefore, because Kimbrough had not been decided at the time of Petitioner's re-sentencing, and the Sixth Amendment does not require attorneys to make arguments based upon anticipated

---

[2] On November 1, 2007, the United States Sentencing Commission adopted Amendment 706 to the U.S. Sentencing Guidelines.  Such Amendment reduces the drug quantity thresholds in U.S.S.G. § 2D1.1 so as to assign, for crack cocaine offenses, base offense levels which correspond to guidelines ranges that include the statutory mandatory minimum penalties.

11

favorable changes in the law, counsel could not have been ineffective for failing to argue for a reduced sentence based upon the variance between the punishments for crack and powder cocaine convictions.

Last, Petitioner argues that counsel was ineffective for failing adequately to prepare for re-sentencing. Notably, however, Petitioner does not point this Court to a single additional matter which his attorney could have raised had he prepared differently for re-sentencing. On the contrary, however, the record reflects that counsel made an extensive argument concerning the Court's consideration of the murder and firearms enhancements; and that the Court declined to impose those enhancements after counsel's argument. (Sent'g. Tr. 15-18, 22). In fact, the Court even declined to stack Petitioner's sentences pursuant to U.S. Sentencing Guidelines § 5G1.2(d) in order to impose a term at the top of the applicable Guidelines range (210 to 262 months) for the drug convictions or a term of up to life imprisonment by virtue of the firearm conviction. (Sent'g. Tr. 24). Therefore, this allegation is factually baseless.

### III. CONCLUSION

Petitioner's first claim is barred and his allegations against counsel are baseless. Accordingly, Petitioner has failed to state a claim for relief.

## VI. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. That Petitioner's Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: December 3, 2008

Frank D. Whitney
United States District Judge